## Case No. 15,348.
### UNITED STATES v. HENNING.

[4 Cranch, C. C. 608.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

MISDEMEANORS — COMMON LAW AND STATUTORY OFFENCES—SELLING FREE MULATTO AS SLAVE.

1. Quære? Whether it is an indictable misdemeanor to attempt to commit an offence, which, if carried into execution, would not go to corrupt the fountains of justice, of legislation, or the executive administration of the law; or involve actual violation or breach of the peace.

2. It makes no difference whether the attempted offence be at common law, or created by statute.

3. To attempt to sell a free mulatto as a slave for life, is not an indictable offence in the District of Columbia.

The defendant, Washington Henning, alias Haney Hedley, was convicted upon an indictment for attempting to sell a free mulatto boy as a slave for life, contrary to the fifteenth and sixteenth sections of the Maryland act of, 1796 (chapter 67). The indictment contained three counts, each concluding against the form of the statute. The first count charged that the defendant unlawfully and fraudulently attempted to carry out of this county and district, forcibly and fraudulently. a free mulatto boy named Thad Key, knowing him to be free. The second count charged that the defendant brought into this county a certain free mulatto boy. under the age of twenty-one years, named Thad Key, bound to service until he was twenty-one years of age. and fraudulently and illegally attempted to sell him as a slave for life to Washington Roby and

[1] [Reported by Hon. William Cranch, Chief Judge.]

George Gray, the defendant knowing him to be entitled to freedom at twenty-one years of age. The third count charged that the defendant brought the free boy into this county, and attempted to sell him as a slave for life to the said Washington. Roby and George Gray, the defendant then knowing the boy to be free.

W. L. Brent, for defendant, moved in arrest of judgment, and contended that there was no indictable offence charged in the indictment; that the statute does not punish the attempt to commit the offence therein mentioned; and that it is not a misdemeanor at common law to attempt to commit an offence created by statute. He cited 1 Russ. Crimes. 44, 47; Rex v. Cartwright (Easter Term, 1806) Russ. & R. 106; 3 Chit. 994, 1140–1142.

Mr. Key, U. S. Dist. Atty., contra, cited 3 Chit. 683, 696, 699, 1131, 1190b, and note; Rex v. Higgins, 2 East, 5–7, 11, 18, 19, 21; Rex v. Philipps, 6 East, 464; 1 Russ. Crimes, 46. It is an indictable offence to attempt to do an act prohibited by statute, as much as it is to do an act prohibited by the common law. But the act of selling a free mulatto as a slave is an offence at common law; it is a cheat by false tokens. The possession and color of the boy are tokens corroborating the assertion of title. Common prudence could not guard against the deceit.

THE COURT (CRANCH, Chief Judge, contra) arrested the judgment.

MORSELL, Circuit Judge, was of opinion that an attempt to commit an offence, created by statute, which was not an offence at common law, is not indictable.

THRUSTON, Circuit Judge. The following remarks are rather an answer to the point made and attempted to be sustained by the attorney for the United States, than an opinion on the indictment itself. I came into court after the indictment was read, and did not hear it; but the two positions stated at the head of the following opinion, were taken by Mr. Key, and as they involved considerations of great importance, I wrote (with little time for deliberation, and without the means of consulting books) the suggestions which are stated below.

.U. S. v. Haney Hedley (otherwise Washington Henning). Indictment at common law, for attempting or offering to sell a free colored boy as a slave.

The attorney for the United States endeavored to support this indictment, on a motion to arrest the judgment by the traverser's counsel, on two grounds: (1) That every attempt or offer to commit any crime or misdemeanor at common law, or by statute, is an indictable offence. (2) That the act itself was, per se, an indictable offence, because it amounted to a common-law cheat or fraud.

As to the first position: Its universality, if carried out, would lead to great absurdities, such as neither the law nor common sense can tolerate, and, therefore, I cannot agree to it; but am of opinion that there is a rational limit to it, beyond which we ought not to go; and this limit is well defined by certain rules and principles, which, if attended to, will direct us into the path to be pursued; this limit embraces only those attempts, or offers, to every day indictments for both; but I have never read of, heard of, or known an indictment for an attempt to commit an assault. Suppose a man were to threaten another that he would beat him, and make demonstrations to that effect, and is held back by others, so as to prevent an assault even, would this be indictable? If so, out of the million of cases of assault and battery in the books, and in this court, we should have heard of, read of, or actually witnessed such a prosecution. These considerations are applicable so far to common-law offences only. Next, as to an attempt, or offer, to violate a penal statute. I endeavored to show to what absurdities this position would lead, if carried to the fullest extent. Instanced the case of attempting to sell a gill of whisky without license; who can imagine such an attempt only, not carried into effect, would be indictable? So in a multitude of parallel cases. There are laws to prevent the hunting of deer, or fishing at certain seasons. Suppose a man proposes to another, to go to hunt or fish in such seasons, and actually provides arms or nets, and they go part of the way and turn back, would this be indictable? My reason and common sense forbid an affirmative reply.

The first position, then, of the attorney of the United States, does not amount to a universal rule; it is too broad. Show me an universal rule of law, holding in all possible cases, and you will show me a phenomenon that my Lord Coke never dreamed of. I cannot see any distinction between an attempt to violate a penal statute, or to commit a common-law offence; if there be any, my reason is too obtuse to discover it. I cannot discern what gives this dignity to a statutory penalty, or prohibition, which cannot be equally claimed by the good old common law. In fact, there is no difference; and the line of demarcation which I have drawn as to common-law offences, ought to be the fixed boundary between punishable and dispunishable attempts to violate penal statutes. Without repeating the class of cases which are indictable, and those which are not, I refer to the numerous specifications of those cases which I have set out in my consideration of them under the common law. The indictment before us, was for a fraud in attempting to sell a free negro as a slave, contrary to the provisions of the penitentiary law. The argument first started on the broad ground, that an attempt to violate any penal statute was an indictable offence; this, I think, I have answered suf-

ficiently; such a broad assumption cannot be sustained.

Secondly, it was urged that the attempt to sell a free man for a slave, was a fraud at common law, and therefore indictable; but the multitude of cases, never yet contradicted, that a mere overreaching, or misrepresentation, in a private sale, is not an offence at common law, seems to me to furnish a clear refutation of this argument. It was then contended in the case in question, that false tokens were used, or false pretences. I heard of none, of nothing more than false representations, or assertions that the negro was free; it was precisely like all those offences, which, though morally wrong, were left entirely, for redress. to civil tribunals, and were not indictable; such as false warranty of a horse which proves unsound; selling wine of inferior quality, for wine of better quality; asserting a right to sell a horse, or other commodity, which turned out to be the property of another, et omne id genus; but it was also urged, with much earnestness. that the case in question was one of great moral turpitude; this goes only to the degree of moral guilt, but does not vary the case from others just enumerated. and alluded to, as civil injuries only, but cannot be distinguished from them, as to its legal characteristics. But the transaction was said to be gross and flagrant turpitude and injustice, and deserved punishment; so it does, but it cannot be punished here. Our sympathies were appealed to in behalf of the poor negro; but we can have none to bestow; and if we had, perhaps a few drops might have fallen to the poor ignorant traverser who probably did not know his danger, and who, if the opinion of the court had been against him, would have been doomed to a lot worse than slavery. Therefore it behooved us to reflect well before we decided.

It seems to me from this. and some other cases which I have remarked. during this court. that the sword of criminal justice is longer than it used to be; it sweeps over a larger space. Offenders have either multiplied astonishingly, or the scale of offences is unusually extended; our grand juries are wielding it with a liberal hand. I did not hear the charge of the Chief Judge at the opening of the court, and therefore cannot say whether they are acting within the scope of his instructions or not; but I must say, from the number of presentments, and the character of some of them, that there is scarcely a hole or a corner of the county, where offenders might skulk, that their inquisitorial eyes have not inspected. and dragged out the offenders to light. This is as it should be, provided due regard be had, not to involve the innocent (innocent. I mean, in the eyes of the law) with the guilty, which I confess it is not easy for gentlemen not skilled in the law, always to avoid. If all, or any large proportion of presentments

and indictments made, and which probably will be made during this court, be sustained, they display a woful amount and increase of crime. But to return to my subject. I am willing to lay down this rule. and without some rule we are afloat in an ocean of uncertainty, "that all attempts to commit an offence. which. if carried into execution. would go to corrupt the fountains of justice. of legislation, or the executive administration of the law; or, if perpetrated, would involve actual violence or breach of the peace, whether statutory or common-law offences, are indictable, otherwise not." We have adjudged that to incite another to commit an assault and battery is indictable. This is the only case of the kind that I am aware of, and there I think we have gone to the utmost limit; but I look upon the inciting another to commit a breach of the peace of more aggravated criminality than an attempt to break the peace one's self. I hardly know how such a case can well be manifested. A man might, in a passion, say and threaten that he would beat another, but is held back by friends and others present; or he might approach another in a threatening manner, and that other might have the heels of him. and run away. I should question much whether either of these demonstrations of hostility are indictable. We have not gone that far yet, and I shall think more of it when the case occurs. Finally, the penitentiary law has provided for the case of attempting to sell a free man for a slave, and declared under what circumstances it shall be punishable. Here we have all that is wanted, or deemed by the sovereign authority to be wanted; and shall we legislate too on the same subject, and declare that an act or acts, not coming up to the statutory description of the offence, are punishable? I cannot, for it does not fall within my rule as I have before laid it down, nor, in my opinion, within the sound principles of law; nay, I reserve to myself the privilege of considering even this rule a little further, and when a case occurs within it. shall deem myself at liberty to narrow it, if, after more reflection, I shall think it right to do so. I have suggested it, for the present, as safe to steer by, so far as it touches the case before us.